PLYMOUTH FERTILIZER COMPANY, INC. v. RODERICK EARL SELBY, SR., D/B/A RODDY SELBY & SONS

No. 832SC539

(Filed 17 April 1984)

**Appeal and Error § 57.5— evidence not supporting findings—findings of fact not supporting conclusion**

    In an action instituted by plaintiff to recover a sum of money plus interest on an alleged account which was tried before a judge without a jury, the evidence did not support the findings of fact, and the findings did not support the conclusions of law. Rather than opening and closing arguments, the attorneys submitted their arguments in "briefs" and the judgment was not signed until two months after the end of the trial. Several important issues were not addressed by the findings of fact and the evidence did not support other findings of fact.

    Judge JOHNSON concurs in the result.

APPEAL by defendant from *Bruce, Judge.* Judgment entered 11 February 1983 in Superior Court, WASHINGTON County. Heard in the Court of Appeals 3 April 1984.

This is a civil action wherein plaintiff seeks to recover of defendant the sum of $7,525.66 plus interest on an alleged account. After a trial before the judge without a jury, the judge made detailed findings and conclusions and entered a judgment that plaintiff have and recover of defendant the sum of $9,549.93 plus interest. Defendant appealed.

*Hutchins, Cockrell & Neumann, P.A., by Howard P. Neumann, for plaintiff, appellee.*

*Stubbs & Chesnutt, P.A., by Marcus Chesnutt and Jerry F. Waddell, for defendant, appellant.*

HEDRICK, Judge.

Defendant has so ignored the North Carolina Rules of Appellate Procedure as to render this appeal subject to dismissal. We suspend the Rules, however, to prevent manifest injustice and to expedite a final decision in this case. Rule 2, North Carolina Rules of Appellate Procedure.

The record discloses that after the trial Judge Bruce and the attorneys representing plaintiff and defendant engaged in the following colloquy:

COURT: You got opening and closing arguments.

MR. NEUMANN: I'll waive the opening.

COURT: Let me ask you this, would you prefer to submit it on Briefs?

MR. NEUMANN: I certainly wouldn't object to that.

MR. CHESNUTT: What is the Court's pleasure.

COURT: Well, I'd rather you submit it on Briefs because I'm hungry and I got to be back here at two o'clock.

MR. CHESNUTT: Judge, where do you want us to mail them?

COURT: To—do you stipulate that the Judgment can be signed out of Session, out of County?

MR. CHESNUTT: Yes sir.

MR. NEUMANN: We stipulate.

COURT: Mail them to P. O. Box 792, Mount Olive, 28365.

MR. NEUMANN: You give us a time limit to have these submitted to you?

COURT: Well, what do you all want to do? *I'd rather you not wait too long until I forget everything about it . . .*

(Emphasis added.)

The dialogue quoted above took place on 8 November 1982. The judgment was signed on 11 February 1983. The record does not disclose when the "briefs" were sent to Judge Bruce, but the

findings of fact made by him and the conclusions of law drawn therefrom demonstrate that the attorneys waited "too long."

The evidence does not support the findings of fact, and the findings do not support the conclusions of law. The evidence adduced at trial discloses that in 1978 the defendant and his two sons, Roddy Selby, Jr., and Vance Selby, purchased agricultural supplies consisting primarily of fertilizer from the plaintiff. These purchases were charged to the account of "Roddy Selby and Sons." Yet Judge Bruce found as a fact that in 1978 "Plaintiff extended credit to Defendant under the name of Selby Farms for materials purchased." The evidence at trial discloses that on 22 January 1979 the defendant paid the "Roddy Selby and Sons" account in full. Yet Judge Bruce found as a fact that "[o]n January 22, 1979, Defendant paid the then outstanding balance owed to Plaintiff in the name of Selby Farms."

In addition to finding facts not supported by the evidence, the court failed to make findings resolving critical issues raised by the evidence. While the court found that "various purchases of fertilizer and chemicals were made on the account of Roddy Selby and Sons subsequent to February 5, 1979," Judge Bruce failed to designate the identity of the persons making the "various purchases" referred to. The record shows that the defendant's entire defense was based on his contention that shortly after he paid the account in full on 22 January 1979, he notified plaintiff's agent that he was "bowing out," and that his sons would henceforth be operating their own business. In this regard defendant testified:

Q. Now, did you have any discussion with Mr. Dunbar in January or early months of 1979 relative to your account?

A. Yes sir. As soon as we found out the boys had acquired a loan to buy the property that we had cultivated in '78, I closed the account out and I saw Jimmy, I believe it was down at O'Neals's.

Q. Is that Jimmy Dunbar?

A. Yes sir. Me and the two boys were together and I notified him at that time that I no longer would be with the boys, that they would be standing alone because they had their own credit established at Farmer's Home Administration.

Q. And had they purchased their own land?

A. Yes sir.

Q. And where did that conversation take place?

A. At O'Neal's Cafe, I guess it is, at Rose Bay.

. . .

Q. And do you remember what the occasion was when you saw Mr. Dunbar?

A. Yes, we had gone to Swan Quarter Equipment Company to pick up some parts for one of the tractors, I believe and coming back by the boys wanted to stop and see Jimmy about establishing credit with him and I told him then that I would be bowing out.

Q. You told who?

A. Jimmy.

Q. Now subsequent to January 19, 1979, that's the date of that check, did you charge anything with Plymouth Fertilizer Company, Inc. in your name?

A. What before that day?

Q. After that?

A. No, not after that day. No.

Q. Did you authorize your sons to charge anything in your name at Plymouth Fertilizer Company, Inc. after . . .

A. No sir, not in my name itself. No.

Q. You did not?

A. No.

Q. Did you—did Jimmy—did you tell Jimmy Dunbar that you were not authorizing any further charges in your name or on your account?

A. I told him to delete my name completely off the ledger that I was going to start doing my business with Cargill, Incorporated in Belhaven, which I did.

Q. Did you—did you charge your stuff with Cargill subsequent to January 19th, 1979?

A. Right.

Defendant's sons corroborated his testimony in regard to his conversation with Jimmy Dunbar. When Mr. Dunbar was examined as to whether defendant notified him of his withdrawal from the business, he testified as follows:

Q. Jimmy, do you recall meeting with Mr. Selby and his two sons down there at Rose Bay sometime in early February?

A. I don't remember it.

Q. Do you remember Mr. Selby ever coming to you and telling you he wasn't going to be responsible for this account?

A. No sir.

MR. NEUMANN: Nothing further.

RECROSS EXAMINATION OF MR. DUNBAR by MR. CHESNUTT:

Q. Are you . . .

COURT: Are you denying such a meeting took place?

A. I'm denying I don't remember it.

COURT: Well, you don't remember having any conversation with this man at Rose Bay at any time?

A. Not on that date. No sir.

COURT: Well, have you ever had a conversation with him at Rose Bay?

A. Not that I know of.

The court made no finding of fact as to this matter.

Plaintiff offered evidence tending to show that in January 1979 defendant's sons asked that the name of the account be changed from "Roddy Selby and Sons" to "Selby Brothers." Plaintiff's agent testified that, "[A]t that time we told them that if

their father would sign the personal guaranty that he would be responsible for the account, we would change it. Otherwise we would leave it like it is." The trial court made no finding whatsoever as to this matter.

Since we have already stated that the evidence does not support the findings, it seems unnecessary to point out that the findings do not support the conclusions. But lest upon remand the parties or the court become even more confused, we want to point out that we are uncertain any construction of the evidence would support the conclusions of law made by Judge Bruce.

Because resolution of the issues raised by the pleadings and the evidence depends considerably upon the credibility of the witnesses, we believe the interests of justice require us, in the exercise of our discretion, to order a new trial in open court.

For the reasons stated, the judgment is vacated and the cause is remanded to Superior Court for a new trial.

New trial.

Judge HILL concurs.

Judge JOHNSON concurs in the result.